### John L. Thompson v. Henry Moesta.

*Trover: Bailment: Reasonable care: Conversion: Charge to the jury.* In an action of trover for the conversion of certain machinery and tools which the defendant leased of the plaintiff and failed to restore at the end of his term, a charge to the jury that a failure on the part of the defendant to keep and care for the goods as a prudent man would of his own, would put an end to the relation of bailor and bailee and render him guilty of the conversion and entitle the plaintiff to bring trover without any demand, is too broad where the evidence of want of due care points only to a portion of the property, and as to that, only shows an exposure to possible injury which does not appear to have resulted in fact.

*Trover: Evidence: Assent: Conversion: Demand.* In such a case proof that a mortgagee of the property told the plaintiff none of it must be removed until the mortgage was paid or reduced and the plaintiff replied "all right," and that the mortgagee communicated this to the defendant and urged him not to let the property go till the mortgage was reduced, is evidence from which *assent* of the plaintiff to the retention of the property might have been found; and if he gave such assent he could not hold defendant liable in trover afterwards without first withdrawing the assent and demanding the property.

*Trover: Offer to deliver: Presumption: Conversion.* In the absence of evidence of any demand and distinct refusal to deliver up the property, in such case,. notice to the plaintiff that he must remove the property or defendant would charge him rent, is equivalent to an offer to deliver, and rebuts the presumption of conversion; and the fact that such offer was made, not to plaintiff directly, but to another who communicated it to plaintiff, does not lessen its effect.—CAMPBELL,. J., dissenting.

*Heard April 18. Decided April 29.*

Error to Wayne Circuit.

*S. Larned* and *Minock & Baker*, for plaintiff in error.

*O. Kirchner*, for defendant in error.

COOLEY, J.

Thompson leased certain premises of Moesta, and also certain machinery and tools in use in a shop thereon. The machinery and tools appear to have been previously mortgaged by Moesta to one Hasselbacher, and though it is not. distinctly stated in the record that the mortgage was over due at the time this controversy arose, that fact is to be. inferred. There was evidence in the case that Hasselbacher told Moesta that he must not remove any of the property mortgaged until the mortgage was paid or reduced; that. Moesta replied, "All right," and Hasselbacher communicated this to Thompson, and told him not to let the property go until the mortgage was .reduced; that Hasselbacher afterwards consented to an engine and boiler being taken out and sold, which was done, and then Hasselbacher told Thompson to let the balance of the things go on demand,. and Thompson, who had then become tenant of the shop to another person, told Hasselbacher,—who communicated the same to Moesta,—that he wanted to repair his shop, and if the things were not taken away he should charge rent for

them. Moesta did not come for them, but sued Thompson in trover for the value, and in the court below recovered judgment.

It is sought to sustain this judgment on two grounds: *First:* That Thompson, while the property was in his possession, suffered it to be so abused and injured as to render himself liable as for a conversion. The evidence on that point is, that when Moesta took away the engine and boiler, he took down for the purpose of taking away, some gearing and shafting, but for some reason left it lying upon the shop floor; that Thompson, finding it in his way, put it into the yard, where it lay for about two days, as Moesta says, in the rain and mud. Moesta says further that this usage would injure such articles, but Thompson testified that they were not in fact injured at all, and neither Moesta nor any other person undertook to deny this statement. There was no evidence to show injury to other articles, and no claim to that effect.

The circuit judge charged the jury that if Thompson failed to keep and care for the goods as a prudent man would of his own, the relation of bailor and bailee was at an end, and the defendant was at the time guilty of the conversion of the property, and the plaintiff could recover in this action without proving any demand. This instruction would seem to refer to all the property, and must have been understood by the jury as authorizing and requiring them to find for the plaintiff for the value of all the articles if they found a failure to observe due care and diligence in the keeping of any of them. There was nothing in the case to warrant so broad a charge. Even as to the gearing and shafting, it is exceedingly difficult to say that under the circumstances there was any such abuse shown as should have been referred to the jury on the question of conversion, for Moesta had actually taken it into his own possession, and if instead of removing it, he left it in Thompson's way, it is very manifest that the latter, even if not justifiable in what he did, could not justly be held liable to

pay the value of the property because in putting it out of the way he exposed it to a possible injury which nobody ventures to say has actually resulted.

*Second :* It is said Thompson was liable because he denied the right of his lessor, and obeyed the direction of Hasselbacher, not to surrender the property. On this point the circuit judge was requested to instruct the jury:

1. That if the jury are satisfied that defendant only refused to deliver the property because so notified by Hasselbacher on an agreement by Hasselbacher to that effect with Moesta, then there is no conversion, and plaintiff cannot recover.

2. That if the jury are satisfied that defendant informed Hasselbacher that Moesta must remove the property or he would charge rent, and Hasselbacher did so inform Moesta, that this is equal to an offer to deliver the property, and rebuts the presumption of any conversion.

Each of these requests was denied. The first, we think, should have been given. There was some evidence of Moesta's assent to the retention of the property by Thompson as Hasselbacher requested, and if he gave such assent, he certainly could not hold Thompson liable in trover afterwards without first withdrawing the assent and demanding the property.

The second should also have been given. There was no evidence that Thompson ever distinctly refused to deliver the property up. If he agreed with Hasselbacher to do so, and even if he informed Moesta of this, it would be going very far to treat such an agreement or such information as being in itself a refusal. But treating it as such, it might still be withdrawn by an offer to give up the property. And though in this case the offer to surrender the property was not made to Moesta directly, but was communicated to Hasselbacher, yet this circumstance is immaterial if in fact it was afterwards communicated to Moesta before proceedings were instituted; and this the evidence tended to show was the case.

27 MICH.—24.

Our conclusion is that the judgment should be reversed, with costs, and a new trial ordered.

CHRISTIANCY, CH. J., and GRAVES, J., concurred.

CAMPBELL, J.

Moesta sued Thompson for the conversion of certain personal chattels leased to him with the privilege of purchasing, but which he did not elect to purchase.

It appeared that the property was subject to a chattel mortgage to Mrs. Hasselbacher, but the date, terms and conditions of the mortgage did not appear,—the fact having been brought out on cross-examination.

After the lease expired, it appeared by the testimony of both parties that Thompson refused to give up the property without Hasselbacher's consent, the latter having directed him not to let the articles go until the mortgage was paid or reduced. A portion of the property was taken away, consisting of an engine and boiler. Certain shafting and a lathe were taken down at the same time, but not removed, and Thompson put them in his yard for a time, where Moesta claims they were exposed to the weather, and afterwards claims to have put them under cover. The lease covered several tools and loose articles also.

The questions presented arise out of certain charges and refusals to charge.

The court, among other things, charged the jury that if Thompson failed to keep and care for the goods as a prudent and careful man would care for his own property, the relation of bailor and bailee was at an end, and the defendant was at the time guilty of the conversion of the property, and the plaintiff could recover in this action without proving any demand. And further charged as follows: "The main question in the case, gentlemen of the jury, as you will see, is whether there was any demand, and that is for you to determine upon the whole case, the whole evidence in the case. Was Thompson willing to deliver up the

property, or did he refuse to let the plaintiff Moesta have it, or did he place himself in a position where a demand was not necessary ?"

It does not appear whether the whole charge was given or not. It is insisted by counsel for defendant in error that the charge in regard to conversion by misusing the property could not have been understood or intended as applying beyond the property misused; and that the latter clause of the general charge was justified by the conduct of Thompson, shown by his own testimony, in denying Moesta's title. If this ground is correct, the other becomes immaterial, and none of the other errors assigned would be important. I think that there is no evidence in the cause which could exonerate Thompson from liability for his denial of Moesta's rights. By the terms of the lease he was bound to restore the property to Moesta as his lessor. It does not appear what the terms of the mortgage were, and it cannot be assumed, without proof, that Mrs. Hasselbacher had, at the time the lease expired, such control as would justify Thompson in obeying her orders in defiance of Moesta. He was bound to return the property, or make out a right to retain it which Moesta would have been estopped from denying. There is no evidence in any way tending to show this, except a statement made by Hasselbacher and denied by Moesta, that Hasselbacher told the latter he must not remove the property from the shop until the mortgage was paid or reduced, and that Moesta replied, "All right," and Hasselbacher told this to Thompson and directed him to let nothing go until the mortgage should be reduced.

There was nothing in this talk, if it was had, which created any agreement, or in any way changed the rights of the parties, and it is not claimed that Moesta joined in giving Thompson any such directions.

As the case stood in the circuit, defendant there admitted he had asserted Hasselbacher's rights as paramount,

and refused to recognize Moesta's.    This was a clear conversion, and no further fact was necessary to give a right of action.—*Caunce v. Spanton, 7 M. & G., 903 ; 2 Greenl. Ev.,* § *644.*

I think the judgment should be affirmed.